**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| **JACKELYN RODRIGUEZ, individually,** | : | |
| **and for all others similarly situated,** | : | **Case No.: 5:23-cv-403** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **FASTMED URGENT CARE, P.C.,** | : | |
| **Defendant.** | : | |

## CLASS ACTION COMPLAINT

Jackelyn Rodriguez ("Plaintiff"), individually and for all other persons similarly situated, by and through her attorneys, submits this Class Action Complaint against FastMed Urgent Care, P.C. ("FastMed" or "Defendant"), alleging as follows:

## NATURE OF THE ACTION

1.      The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996) and North Carolina Gen. Stat. § 132-1, § 130A-12, and §§ 130A-134 to 130A-144, relating to the confidentiality of medical records, prohibit healthcare providers from sharing health care information, medical records, and related information with third parties except as needed for a patient's treatment or payment, or with their consent. These laws give patients a reasonable expectation of privacy in communications with healthcare providers relating to their medical conditions and treatment.

2.      The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*, protects electronic data when it is communicated, while it is in transit, and when it is stored. This law gives patients a reasonable expectation of privacy when they engage in electronic

communications with their healthcare providers by assuring their personal health information will remain confidential and secure.

3.      Plaintiff brings this action to redress Defendant's highly-offensive practice of placing computer code on its FastMed website and MyChart portal ("FastMed's web properties") that intercepts both the characteristics and the contents of communications about individual patients' past, present, and future medical conditions, concerns, symptoms, appointments, providers, treatments, medications, bills, and insurance ("individually-identifiable health information"), transmits this data to Meta for analysis and, thereafter, puts this data to commercial uses benefitting both Defendant and Meta without providing notice to, or receiving consent from the users of FastMed's web properties.

## PARTIES

4.      Plaintiff is an adult person who resides in the State of North Carolina. Plaintiff has been a patient of FastMed and has used the FastMed website and MyChart portal to facilitate and inform her medical care and treatment decisions since approximately 2015. Plaintiff opened a Facebook account before 2009 and has continuously maintained this account to the present. During the relevant time period, Plaintiff has used FastMed's web properties to message doctors, schedule appointments, find office locations, review medications and doctor's notes, and look up information on medical conditions and treatments.

5.      FastMed is an integrated healthcare provider/payer system based in Raleigh, North Carolina that operates nearly 200 medical clinics in North Carolina, Florida, Texas, and Arizona. FastMed encourages its patients, which number in the thousands, to provide and receive individually-identifiable health information through its website and MyChart portal.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*.

7.      This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 and 1711-15 ("CAFA"), expressly provides federal courts with jurisdiction over any class action in which: the proposed class includes at least 100 members; any member of the class is a citizen of a state and any defendant is a citizen or subject of a foreign state; and the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

8.      This Court possesses ancillary jurisdiction over all Plaintiff's state-law claims because these claims are factually interdependent of Plaintiff's federal claims and to foster judicial economy, convenience, and fairness to the litigants.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does business in, and is subject to, personal jurisdiction in this District.  Venue is also proper in this District, because a substantial part of the events and omissions giving rise to the claim occurred in, and emanated from, this District.

## BACKGROUND FACTS

10.      A Meta Pixel is a snippet of code that a business can insert on the "back end" of its website to collect data about which pages users view, which links users click, what content users access, how much time users spend on each page, and how the website responds to users' inquiries.

11.      A business intending to add a Meta Pixel to its website identifies the data it wants to intercept and provides this information to Meta.  Meta then writes code that tells the Meta Pixel what to do, and sends this code to the business.  The business then installs the Meta Pixel by adding

this code into the "back end" of its website. Once this is done, the Meta Pixel begins to intercept the specified data and send it to Meta.

12. Meta analyzes the intercepted data it receives from the Meta Pixel and uses this data for commercial purposes that include building-out its user profiles and selling high-value targeted advertisements. Meta also sends the intercepted data to the business, along with its analysis, for the business' own commercial purposes, that include understanding how people use its website and determining what ads its users see.

13. When a person opens a Facebook account, they accept Meta's Terms, Data Policy, and Cookie Policy *via* a checkbox on the Sign-Up page, *https://www.facebook.com*, and create their Facebook ID, the unique, persistent identifier assigned to each user. Facebook's Data Policy requires businesses that use Meta Pixels "to have lawful rights to collect, use, and share your data before providing any data to [Facebook]." *See* Facebook Data Policy, *https://www.facebook.com/privacy/policy/version/20220104/.*

14. Meta's policies expressly provide that businesses using Meta Pixels will not share data that they "know or reasonably should know... includes health, financial information or other categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)." *See* Facebook Business Tools, Term 1(h), *https://www.facebook.com/legal/terms/businesstools*; Meta Commercial Term 3, *https://www.facebook.com/legal/commercial_terms.*

15. Instead of taking proactive steps to verify that businesses using Meta Pixels obtain the required consent, Meta uses an "honor system" under which it assumes these businesses "represent and warrant that [they have] provided robust and sufficient prominent notice to users

regarding the Business Tool Data collection, sharing, and usage." *See* Facebook Business Tools Terms, *https://www.facebook.com/legal/terms/businesstools*.

16.     To attract patients, enable their pursuit of medical care, foster its provision of that medical care, and support its business, FastMed's web properties enable FastMed patients and the general public to engage in a wide array of communications concerning their individually-identifiable health information.

17.     With respect to individually-identifiable health information, FastMed's Notice of Privacy Practices defines "protected health information" as "any past, present and future healthcare information," including but not limited to a patient's "name, address, social security number, [and] date of birth" and advises that patients "have the right to receive confidential communications of [their] protected health information." *See* FastMed Notice of Privacy Practices, *https://www.fast med.com/privacy-practices/*.

18.     With respect to individually-identifiable health information, FastMed's Notice of Privacy Practices advises that "HIPAA requires Covered Entity by law to maintain the privacy of your protected health information." *Id.*

19.     With respect to individually-identifiable health information, FastMed's Notice of Privacy Practices advises that "Generally, we may not use or disclose your protected health information without your permission." *Id.*

20.     With respect to individually-identifiable health information, FastMed's Notice of Privacy Practices requires FastMed to obtain patient authorization to disclose patient health information "that constitute[s] a sale of protected health information" and to obtain patient authorization to disclose protected health information "for marketing purposes unless (i) the communication occurs face-to-face; (ii) consists of marketing gifts of nominal value; (iii) is

regarding a prescription refill reminder that is for a prescription currently prescribed or a generic equivalent; (iv) is for treatment pertaining to existing condition(s) and FastMed does not receive any financial remuneration in either case or cash equivalent; and/or (v) communication from a healthcare provider to recommend or direct alternative treatments, therapies, healthcare providers, or settings of care when FastMed does not receive any financial remuneration for making the communication." *Id.*

21.     With respect to individually-identifiable health information, FastMed's Notice of Privacy Practices advises that "even with your permission, we are still required to limit such uses or disclosures to the minimal amount of protected health information that is reasonably required to provide those services or complete those activities." *Id.*

22.     With respect to individually-identifiable health information, FastMed's Website Privacy Policy represents that patient "privacy is important to us" and that "It is our policy to protect your personal information and to use it only in accordance with this Privacy Policy." *See* FastMed Privacy Policy, *https://www.fastmed.com/privacy-policy/.*

23.     With respect to individually-identifiable health information, FastMed's MyChart Privacy Policy represents that "The information you provide on this web site is protected by applicable law." *See* FastMed MyChart Privacy Policy, *https://mychart.fastmed.com/MyChart/Authentication/Login?mode=stdfile&option=hlthprivacy.*

24.     With respect to individually-identifiable health information, FastMed's MyChart Terms and Conditions represents that "Our employees are subject to strict standards for maintaining your confidentiality" and that "FastMed is dedicated to keeping [patient] medical information confidential." *See* FastMed MyChart Terms and Conditions, *https://mychart.fastmed.com/MyChart/Authentication/Login?mode=stdfile&option=termsandconditions.*

25.     Notwithstanding all these representations, FastMed designed Meta Pixels for FastMed's web properties that would capture both the "characteristics" (*i.e.,* IP addresses, Facebook ID, cookie identifiers, device identifiers and account numbers) and "content" (*i.e.,* URLs, buttons, links, pages, and tabs they view) of users' communications.

26.     Notwithstanding all these representations, FastMed installed these Meta Pixels on FastMed's web properties.  Thereafter, FastMed began to receive extensive individually-identifiable health information from everyone who visited FastMed's web properties, share this information with Meta, use this information for its own commercial purposes, and allow Meta to use this information for its commercial purposes.

27.     For example, anyone who visits FastMed's website and clicks on the "Services" tab is directed to a page, *https://www.fastmed.com/services/*, showing 11 different service options, ranging from "Coronavirus testing & vaccination" to "Woman's health."  Anyone who clicks the "Labs & X-rays" button is directed to a page, *https://www.fastmed.com/services/labs-and-xrays/*, listing several services, each with a separate link.  Selecting any of these links, like "Confidential STD testing," directs the user to a new page, *https://www.fastmed.com/services/labs-and-xrays/confidential-std-testing/*, with more buttons linked to specific conditions, services, and treatment locations.  Anyone who enters a city/state or ZIP to find the nearest FastMed location is directed to a list of location options, like *https://www.fastmed.com/urgent-care-centers/asheville-nc-walk-in-clinic/*, that provide information about store hours, locations, services, treatments, providers, and telemedicine options, many of which have additional links and buttons.

28.     The Meta Pixel intercepts the "characteristics" and "content" of every communication on FastMed's web properties and contemporaneously transmits this data to Meta, thereby revealing to Meta the exact links, buttons, and pages that users click-on and view, thereby

disclosing their individually-identifiable health information (*e.g.*, about STD testing, conditions, treatment options, and provider locations).

29.     After receiving the individually-identifiable health information communicated from web property users' computing devices to FastMed's web properties, Meta analyzes and uses this information for its own commercial purposes that include: building more fulsome profiles of its users' preferences and traits and selling more-targeted advertisements based on this information.  Meta also receives an additional commercial benefit from FastMed's use of Meta Pixels, namely that it provides FastMed with a greater incentive to advertise on Meta's social media platforms.

30.     After receiving the individually-identifiable health information communicated from web property users' computing devices to FastMed's web properties, FastMed analyzes and uses this information for its own commercial purposes that include: understanding how people use FastMed's web properties and determining what ads people see on FastMed's web properties. FastMed also receives an additional commercial benefit from using Meta Pixels, namely that Meta pays it for access to the commercially-valuable, individually-identifiable health information communicated on FastMed's web properties.

31.     Meta is not an intended recipient of the individually-identifiable health information communicated on FastMed's web properties, nor is it an active or disclosed participant in these communications.

32.     FastMed does not notify users of FastMed's web properties that it is sending individually-identifiable health information communicated on FastMed's web properties to Meta.

33.     FastMed does not notify users of FastMed's web properties that Meta is using the individually-identifiable health information they communicate on FastMed's web properties for its commercial purposes.

34.     FastMed does not notify users of FastMed's web properties that it is putting the individually-identifiable health information they communicate on FastMed's web properties to its own commercial use.

35.     Meta has not secured any informed consent or written permission allowing it to use individually-identifiable health information communicated on FastMed's web properties for commercial purposes.

36.     FastMed has not secured any informed consent or written permission allowing it to share individually-identifiable health information communicated on FastMed's web properties with Meta.

37.     FastMed has not secured any informed consent or written permission allowing it to use individually-identifiable health information communicated on FastMed's web properties for its own commercial purposes.

38.     The Office of Civil Rights at the United States Department of Health and Human Services ("HHS") recently issued a bulletin concerning online tracking technologies used by HIPAA-covered entities condemning the conduct alleged here.  *See* HHS Bulletin (Exhibit 1).

39.     The HHS Bulletin's purpose is: "to highlight the obligation of [HIPAA]-covered entities and business associates… under the HIPPA [Privacy Rules] when using online tracking technologies." *Id.*

40.     The HHS Bulletin does not change any existing rule, or impose any new obligation on HIPAA-covered entities.  Instead, it reminds these entities of their long-standing obligations by

referring to guidance and rules that have been in place for decades. *Id.* ("it has always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors").

41.    The HHS Bulletin concludes that: "HIPAA Rules apply when the information that regulated entities collect through tracking technologies or disclose to tracking technology vendors includes protected health information" and expressly clarifies that HIPAA protects both authenticated (*i.e.,* patient portal) and unauthenticated (*i.e.,* public) pages. *Id.*

42.    The HHS Bulletin explains that, in these circumstances, the protection of HIPAA Rules is necessary both because tracking technologies on a regulated entity's user-authenticated webpages generally have access to protected health information, including "an individual's IP address, medical record number, home or email addresses, dates of appointments… an individual's diagnosis and treatment information, prescription information, billing information, or other information within the portal," and because "[t]racking technologies on a regulated entity's unauthenticated webpage that addresses specific symptoms or health conditions… or that permits individuals to search for doctors or schedule appointments," may have access to protected health information when such tracking technologies collect information that identifies the individual. *Id.*

43.    The HHS Bulletin also specifically reminds HIPAA-covered entities of their obligation to protect communications received from the general public on their websites "even if the individual does not have an existing relationship with the regulated entity and even if the IIHI, such as IP address or geographic location, does not include specific treatment or billing information like dates and types of health care services," because the information collected from these communications "connects the individual to the regulated entity (*i.e.*, it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, or future health or health care or payment for

care." *Id.* (citing January 25, 2013 Modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules, 78 FR 5566, 5598 ("[P]rotected health information… may not necessarily include diagnosis-specific information, such as information about the treatment of an individual, and may be limited to demographic or other information not indicative of the type of health care services provided to an individual. If the information is tied to a covered entity, then it is protected health information by definition since it is indicative that the individual received health care services or benefits from the covered entity, and therefore it must be protected… in accordance with the HIPAA rules")).

44.     The HHS Bulletin and the 2013 Modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules are consistent with all other HIPAA rules and regulations relating to the communications at issue in this action.

## FACTS RELATING TO THE NAMED PLAINTIFF

45.     Since approximately 2015, Plaintiff has used FastMed's website to schedule appointments, locate FastMed providers and locations, and find information on specific health conditions, treatments, and medications. Throughout this time, Plaintiff has also used FastMed's MyChart portal to message doctors, view doctor's notes, schedule appointments, and review her medications.

46.     Plaintiff did not use FastMed's web properties to share her individually-identifiable health information with Meta, or to enable Meta or FastMed to put this data to any commercial use.

47.     FastMed never notified Plaintiff that it would send individually-identifiable health information about her past, present, or future health conditions to Meta.

48.     FastMed never notified Plaintiff that it or Meta would put individually-identifiable health information about her past, present, or future health conditions to any commercial use.

49.     Plaintiff never provided informed consent or written permission allowing FastMed to send individually-identifiable health information about her past, present, or future health conditions to Meta.

50.     Plaintiff never provided informed consent or written permission allowing FastMed or Meta to put individually-identifiable health information about her past, present, or future health conditions to any commercial use.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings her claims on a class-wide basis under Federal Rules of Civil Procedure 23(a) and (b)(3) for:

> All people who used FastMed's web properties and had individually-identifiable health information about their past, present, or future health conditions shared with Meta without notice or consent.

("the Class members").

52.     This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(1), because the Class members are so numerous and geographically-dispersed that their joinder would be impracticable.  Plaintiff believes that Defendant's business records will permit the identification of thousands of people meeting the Class definition.

53.     This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(2), because there are many common questions of facts and law concerning and affecting the Class members, including:

> a.      Whether FastMed had a duty to protect and refrain from disclosing the Class members' individually-identifiable health information;

   b.  Whether FastMed intentionally disclosed the Class members' individually-identifiable health information to Meta;

   c.  Whether the Class members consented to FastMed's disclosure of their individually-identifiable health information to Meta;

   d.  Whether the Class members are entitled to damages as a result of Defendant's conduct; and

   e.  Whether FastMed's knowing disclosure of its patients' individually-identifiable health information to Meta represents "criminal or tortious" conduct under 18 U.S.C § 2511(2)(d).

54. Plaintiff also anticipates that Defendant will raise defenses common to the Class.

55. This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(3), because Plaintiff's claims are typical of the claims belonging to the Class members. Plaintiff and the Class members were harmed by the same wrongful conduct perpetrated by Defendant that caused their individually-identifiable health information to be intercepted and disclosed without notice or consent. As a result, Plaintiff's claims are based on the same facts and legal theories as the Class members' claims.

56. This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(4), because Plaintiff will fairly and adequately protect the interests of all the Class members, there are no known conflicts of interest between Plaintiff and the Class members, and Plaintiff has retained counsel experienced in the prosecution of complex litigation.

57. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because common questions of law and fact predominate over questions affecting the individual Class members, because a class action is superior to other available methods for the fair and efficient adjudication of these claims and because important public interests will be served by addressing the matter as a

class action. Further, the prosecution of separate actions by the individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and substantially impair the Class members' ability to protect their interests.

**COUNT I**
**Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.***

58.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

59.     The Class members' use of FastMed's web properties constitutes an electronic communication under the ECPA. *See* 18 U.S.C. § 2510(12).

60.     The ECPA provides: "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception *unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States* or of any State." *See* 18 U.S.C § 2511(2)(d) (emphasis added).

61.     Plaintiff and the Class members used FastMed's web properties to engage in electronic communications with Defendant about their individually-identifiable health information under 43 U.S.C. § 1320(d)(6), because the information they communicated was received by a healthcare provider, identified the individual making the communication, and related to their past, present, or future physical or mental health or condition, their receipt of health care, and/or their payment for that care. *See* HHS Bulletin (Exhibit 1).

62.     Defendant violated the ECPA by working with Meta to design Meta Pixels that intercept the characteristics and content of electronic communications containing individually-identifiable health information that Plaintiff and the Class members made on FastMed's web properties and transmit this information to Meta despite knowing (or having reason to know) Meta

was not lawfully entitled to receive or use this information. *See* 18 U.S.C. §§ 2511 (1)(a), 2511(c)–(d), 2511 (3)(a); 42 U.S.C. § 1320(d)(6).

63.     Defendant violated the ECPA by receiving and intercepting electronic communications containing individually-identifiable health information from the Class members on FastMed's web properties for the purpose of knowingly disclosing and releasing this information to Meta for commercial purposes without consent, in violation of HIPAA, 42 U.S.C. § 1320(d)(6).

64.     Defendant is not exempt from ECPA liability under 18 U.S.C. § 2511(2)(d) on the ground that it participated in Plaintiff's and the Class members' communications about their individually-identifiable health information, because it used its participation in these communications to improperly share Plaintiff's and the Class members' individually-identifiable health information with Meta, a third-party that did not participate in these communications, that Plaintiff and the Class members did not know was receiving their individually-identifiable health information, and that Plaintiff and the Class members did not authorize to receive or use this information.

65.     Defendant is not exempt from ECPA liability under 18 U.S.C. § 2511(2)(d) on the ground that it participated in Plaintiff's and the Class members' communications about their individually-identifiable health information, because the purpose of Defendant's criminal or tortious act (*i.e.,* disclosing the Class members' individually-identifiable health information to an unidentified third party for commercial use without notice or consent) was independent of its receipt and interception of that information (*i.e.,* by operation of the Meta Pixel).

66.     Any person whose electronic communication is intercepted in violation of ECPA has a private right of action under 18 U.S.C. §2520(a).

67.     As a result of Defendant's violation of the ECPA, Plaintiff is entitled to all damages available under 18 U.S.C. § 2520, including equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

**COUNT II**
**Negligence**

68.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69.     Plaintiff and the Class members have communicated individually-identifiable health information to FastMed through FastMed's web properties, *https://www.fastmed.com/* and *https://mychart.fastmed.com/MyChart/*, and/or received healthcare services from doctors employed by FastMed.

70.     FastMed assumed a duty to keep Plaintiff's and the Class members' individually-identifiable health information confidential by virtue of creating and maintaining FastMed's web properties as public healthcare resources and its employment relationship with its doctors.

71.     FastMed assumed a duty to keep Plaintiff's and the Class members' individually-identifiable health information confidential by issuing Privacy Practices that define "protected health information" as "any past, present and future healthcare information," including but not limited to a patient's "name, address, social security number, [and] date of birth" and advise that patients "have the right to receive confidential communications of [their] protected health information." *See* FastMed Notice of Privacy Practices, *https://www.fastmed.com/privacy-practices/.*

72.     FastMed assumed a duty to keep Plaintiff's and the Class members' individually-identifiable health information confidential by issuing a Notice of Privacy Practices representing that "HIPAA requires Covered Entity by law to maintain the privacy of your protected health information." *Id.*

73.     FastMed assumed a duty to keep Plaintiff's and the Class members' individually-identifiable health information confidential by issuing a Notice of Privacy Practices representing that "Generally, we may not use or disclose your protected health information without your permission." *Id.*

74.     FastMed assumed a duty to keep Plaintiff's and the Class members' individually-identifiable health information confidential by issuing a Notice of Privacy Practices that requires FastMed to obtain patient authorization to disclose patient health information "that constitute[s] a sale of protected health information" and to obtain patient authorization to disclose patient health information "for marketing purposes unless (i) the communication occurs face-to-face; (ii) consists of marketing gifts of nominal value; (iii) is regarding a prescription refill reminder that is for a prescription currently prescribed or a generic equivalent; (iv) is for treatment pertaining to existing condition(s) and FastMed does not receive any financial remuneration in either case or cash equivalent; and/or (v) communication from a healthcare provider to recommend or direct alternative treatments, therapies, healthcare providers, or settings of care when FastMed does not receive any financial remuneration for making the communication." *Id.*

75.     FastMed assumed a duty to keep Plaintiff's and the Class members' individually-identifiable health information confidential by issuing a Notice of Privacy Practices representing that "even with your permission, we are still required to limit such uses or disclosures to the minimal amount of protected health information that is reasonably required to provide those services or complete those activities." *Id.*

76.     FastMed assumed a duty to keep Plaintiff's and the Class members' individually-identifiable health information confidential by issuing a Website Privacy Policy representing that "privacy is important to us" and that "It is our policy to protect your personal information and to

use it only in accordance with this Privacy Policy." *See* FastMed Privacy Policy, *https://www.fastmed.com/privacy-policy/*.

77. FastMed assumed a duty to keep Plaintiff's and the Class members' individually-identifiable health information confidential by issuing a MyChart Privacy Policy representing that "The information you provide on this web site is protected by applicable law." *See* FastMed MyChart Privacy Policy, *https://mychart.fastmed.com/MyChart/Authentication/Login?mode=std file&option=hlthprivacy*.

78. FastMed assumed a duty to keep Plaintiff's and the Class members' individually-identifiable health information confidential by issuing MyChart Terms and Conditions which represent that "Our employees are subject to strict standards for maintaining your confidentiality" and that "FastMed is dedicated to keeping [patient] medical information confidential." *See* FastMed MyChart Terms and Conditions, *https://mychart.fastmed.com/MyChart/Authentication/ Login?mode=stdfile&option=termsandconditions*.

79. FastMed has a legal duty not to disclose Plaintiff's and the Class members' medical records for marketing purposes without their express written authorization under multiple federal laws. *See, e.g.,* 42 U.S.C. § 1320; 45 C.F.R. §§ 164.501; 164.508(a)(3), 164.514(b)(2)(i).

80. FastMed has a legal duty to keep Plaintiff's and the Class members' medical records confidential and private absent express written authorization under North Carolina law. *See, e.g.,* North Carolina Gen. Stat. § 132-1, § 130A-12, and §§ 130A-134 to 130A-144.

81. FastMed has breached the many duties of care it owes and assumed by, among other things, placing computer code on FastMed's web properties to intercept the characteristics and contents of communications about individually-identifiable health information, transmitting this data to Meta, allowing Meta to analyze and use this data for its commercial purposes, and putting

this data to its own commercial use, all without providing any notice to Plaintiff and the Class members or receiving their informed consent.

82.    By engaging in the conduct alleged herein, FastMed directly and proximately caused Plaintiff and the Class members to suffer actual harm and damages that include:

        a.    a loss in the value of their individually-identifiable health information;

        b.    embarrassment, humiliation, emotional harm, and distress as a result of the unauthorized transmission and commercial use of their individually-identifiable health information;

        c.    being deprived of the full value of healthcare services for which they paid, which included a duty to maintain the confidentiality of their patient information;

        d.    being deprived of a proportional share of the value Meta paid Defendant to gain access to their individually-identifiable health information for its commercial use; and

        e.    being deprived of a proportional share of the value Defendant gained by putting their individually-identifiable health information to its commercial use.

**COUNT III**
**Invasion of Privacy - Intrusion Upon Seclusion**

83.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

84.    The common-law tort of intrusion protects others from intentionally intruding into a communication or matter as to which another has a reasonable expectation of privacy.

85.    Plaintiff and the Class members have a reasonable expectation of privacy in their communications on FastMed's web properties, because doctor-patient communications inherently contain details of patients' physical and medical conditions that are universally understood to be personal, private, and deserving of the strictest confidentiality.

86.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications on FastMed's web properties, because these communications involve individually-identifiable health information that FastMed was under a legal duty to shield from disclosure.

87.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications on FastMed's web properties, because FastMed's Notice of Privacy Practices defines "protected health information" as "any past, present and future healthcare information," including but not limited to a patient's "name, address, social security number, [and] date of birth" and advises that patients "have the right to receive confidential communications of [their] protected health information." *See* FastMed Notice of Privacy Practices, *https://www.fastmed.com/privacy-practices/.*

88.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications on FastMed's web properties, because FastMed's Notice of Privacy Practices advises that: "HIPAA requires Covered Entity by law to maintain the privacy of your protected health information." *Id.*

89.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications on FastMed's web properties, because FastMed's Notice of Privacy Practices advises that: "Generally, we may not use or disclose your protected health information without your permission." *Id.*

90.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications on FastMed's web properties, because FastMed's Notice of Privacy Practices requires FastMed to obtain patient authorization to disclose patient health information "that constitute[s] a sale of protected health information" and to obtain patient authorization to disclose

patient health information "for marketing purposes unless (i) the communication occurs face-to-face; (ii) consists of marketing gifts of nominal value; (iii) is regarding a prescription refill reminder that is for a prescription currently prescribed or a generic equivalent; (iv) is for treatment pertaining to existing condition(s) and FastMed does not receive any financial remuneration in either case or cash equivalent; and/or (v) communication from a healthcare provider to recommend or direct alternative treatments, therapies, healthcare providers, or settings of care when FastMed does not receive any financial remuneration for making the communication." *Id.*

91.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications on FastMed's web properties, because FastMed's Notice of Privacy Practices represents that: "even with your permission, we are still required to limit such uses or disclosures to the minimal amount of protected health information that is reasonably required to provide those services or complete those activities." *Id.*

92.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications on FastMed's website, because FastMed's Website Privacy Policy represents that: "privacy is important to us" and "It is our policy to protect your personal information and to use it only in accordance with this Privacy Policy." *See* FastMed Privacy Policy, *https:// www.fastmed.com/privacy-policy/*.

93.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications on FastMed's MyChart Portal, because FastMed's MyChart Privacy Policy represents that: "The information you provide on this web site is protected by applicable law." *See* FastMed MyChart Privacy Policy, *https://mychart.fastmed.com/MyChart/Authentication/Log in?mode=stdfile&option=hlthprivacy*.

94.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications on FastMed's MyChart Portal, because FastMed's MyChart Terms and Conditions represent that: "Our employees are subject to strict standards for maintaining your confidentiality" and that "FastMed is dedicated to keeping [patient] medical information confidential." See FastMed MyChart Terms and Conditions, *https://mychart.fastmed.com/My Chart/Authentication/Login?mode=stdfile&option=termsandconditions*.

95.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications on FastMed's web properties, because Meta's policies say that businesses using Meta Pixels will not share data they "know or reasonably should know... includes health, financial information or other categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)." *See* Facebook Business Tools terms, *https://www.facebook.com/legal/terms/businesstools* at 1(h); Meta Commercial Terms, *https://www.facebook.com/legal/commercialterms* at 3.

96.     FastMed intentionally intruded into Plaintiff's and the Class members' private communications on FastMed's web properties by placing computer code that intercepted the characteristics and contents of communications that included individually-identifiable health information and transmitted this information to Meta without notice or consent.

97.      FastMed intentionally intruded into Plaintiff's and the Class members' private communications on FastMed's web properties by using individually-identifiable health information intercepted from these communications for its own commercial purposes.

98.      FastMed intentionally intruded into Plaintiff's and the Class members' private communications on FastMed's web properties by allowing Meta to use individually-identifiable health information intercepted from these communications for its commercial purposes.

99.     FastMed's intentional intrusion into Plaintiff's and the Class members' private communications on FastMed's web properties is highly offensive to a reasonable person, because it operates a healthcare system founded upon the principle that patients' communications with their healthcare provider must be kept private and confidential so doctors can make fully-informed treatment decisions and provide the most directed, appropriate care.

100.    FastMed's intentional intrusion into Plaintiff's and the Class members' private communications on FastMed's web properties is highly offensive to a reasonable person, because the information it intercepted is universally understood to be personal, private, and deserving of confidential treatment.

101.    FastMed's intentional intrusion into Plaintiff's and the Class members' communications on FastMed's web properties is highly offensive to a reasonable person, because it violated its own repeated, public promises to keep individually-identifiable health information private, confidential, secure, and protected against unauthorized use without notice and consent.

102.    FastMed's intentional intrusion into Plaintiff's and the Class members' communications on FastMed's web properties is highly offensive to a reasonable person, because it involved intercepting and disclosing the contents of individually-identifiable health information to Meta, which was not a participant in, or an intended recipient of, these communications.

103.    FastMed's intentional intrusion into Plaintiff's and the Class members' communications on FastMed's web properties is highly offensive to a reasonable person, because it did not provide notice to Plaintiff or the Class members that it would put their individually-identifiable health information to its own commercial use.

104.    FastMed's intentional intrusion into Plaintiff's and the Class members' communications on FastMed's web properties is highly offensive to a reasonable person, because

it did not provide notice to Plaintiff or the Class members that it would share their individually-identifiable health information with Meta, or allow Meta to put this information to commercial use.

105. FastMed's intentional intrusion into Plaintiff's and the Class members' communications on FastMed's web properties is highly offensive to a reasonable person, because it did not provide Plaintiff or the Class members with adequate notice of its intention to put their individually-identifiable health information to commercial use.

106. FastMed's intentional intrusion into Plaintiff's and the Class members' communications on FastMed's web properties is highly offensive to a reasonable person, because it did not receive informed, written consent from Plaintiff or the Class members allowing it to put their individually-identifiable health information to commercial use.

107. FastMed's intentional intrusion into Plaintiff's and the Class members' communications on FastMed's web properties is highly offensive to a reasonable person, because it did not provide adequate notice of its intention to allow Meta to put their individually-identifiable health information to commercial use.

108. FastMed's intentional intrusion into Plaintiff's and the Class members' communications on FastMed's web properties is highly offensive to a reasonable person, because it did not receive informed, written consent from Plaintiff or the Class members allowing Meta to put their individually-identifiable health information to commercial use.

109. FastMed's intentional intrusion into Plaintiff's and the Class members' communications on FastMed's web properties is highly offensive to a reasonable person, because the commercial use of Plaintiff's and the Class members' individually-identifiable health

information provided substantial financial value and generated substantial economic benefit for both Defendant and Meta that was not shared with Plaintiff or the Class members.

110.    By engaging in the conduct alleged herein, FastMed directly and proximately caused Plaintiff and the Class members to suffer damages that include:

  a.    a loss in the value of their individually-identifiable health information;

  b.    embarrassment, humiliation, emotional harm, and distress as a result of the unauthorized transmission and commercial use of their individually-identifiable health information;

  c.    being deprived of the full value of healthcare services for which they paid, which included a duty to maintain the confidentiality of their patient information;

  d.    being deprived of a proportional share of the value Meta paid Defendant to gain access to their individually-identifiable health information for its commercial use; and

  e.    being deprived of a proportional share of the value Defendant gained by putting their individually-identifiable health information to its commercial use.

**COUNT IV**
**Violation of the North Carolina Electronic Surveillance Act**
**(for citizens of North Carolina only)**

111.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

112.    The North Carolina Electronic Surveillance Act, N.C. Gen. Stat. § 15A-286 (2015) ("NCESA"), prohibits the procurement of electronic communications, the use of devices to intercept electronic communications, and the willful disclosure and use of the contents of electronic communications obtained through prohibited conduct.

113.    The Class members' electronic communications about their past, present, and future medical conditions, concerns, symptoms, appointments, providers, treatments, medications, bills, and insurance on FastMed's web properties are "contents," "electronic communications," and

"wire communications" as defined by the NCESA. *See* NC Gen Stat §§ 15A-286(6), 15A-286(8), and 15A-286(21).

114. The computers, devices, and code (including the Meta Pixel) used intercept the Class members' electronic communications on FastMed's web properties are an "electronic, mechanical, or other device," an "electronic communication service," and an "electronic communication system" as defined by the NCESA. *See* NC Gen Stat §§ 15A-286(7), 15A-286(9), and 15A-286(10).

115. Defendant's interception of the characteristics and contents of the Class members' communications about individually-identifiable health information is "interception" as defined by the NCESA. *See* NC Gen Stat § 15A-286(13).

116. Defendant violated the NCESA by procuring another person, Meta, to intercept, or endeavor to intercept, wire or electronic communications the Class members made on FastMed's web properties. *See* NC Gen Stat §§ 15A-287(a)(1).

117. Defendant violated the NCESA by willfully disclosing to Meta, the contents of wire or electronic communications the Class members made on FastMed's web properties, knowing or having reason to know this information was obtained through violation of the NCESA. *See* NC Gen Stat §§ 15A-287(a)(3).

118. Defendant violated the NCESA by willfully using or endeavoring to use, the contents of wire or electronic communications the Class members made on FastMed's web properties, knowing or having reason to know this information was obtained through the interception of a wire or oral communication in violation of the NCESA. *See* NC Gen Stat §§ 15A-287(a)(4).

119.    Defendant is not exempt from NCESA liability under any of the exclusions found in NC Gen Stat §§ 15A-287(b)-(d).

120.    Defendant violated the NCESA by manufacturing and possessing an electronic, mechanical, or other device, knowing or having reason to know that the design of the device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications.  *See* NC Gen Stat §§ 15A-288(a)(1).

121.    Defendant is not exempt from NCESA liability under any of the exclusions found in NC Gen Stat §§ 15A-288(b)-(c).

122.    Any person whose wire or electronic communication is intercepted, disclosed, or used in violation of the NCESA may pursue a civil cause of action against any person who intercepts, discloses, uses, or procures any other person to intercept, disclose, or use such communications and, on their claim, is entitled to recover actual damages of up to $1,000 plus punitive damages, reasonable attorneys' fees and litigation costs under NC Gen Stat §§ 15A-296(a).

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully asks this Court for an Order:

a.    Certifying this case as a class action, appointing Plaintiff as Class Representative, and appointing Stephan Zouras, LLP as Class Counsel;

b.    Entering judgment for Plaintiff and the Class members on their ECPA claim and awarding all damages available under 18 U.S.C. § 2520, including equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs;

c.    Entering judgment for Plaintiff and the Class members on their negligence claim and awarding all available damages, including the value FastMed received from selling or licensing Plaintiff's and the Class members' individually-identifiable health information to Meta and/or sharing this

information with Meta, and the value FastMed received from using Plaintiff's and the Class members' individually-identifiable health information for its own commercial benefit;

d. Entering judgment for Plaintiff and the Class members on their intrusion upon seclusion claim and awarding all available damages, including injunctive relief requiring FastMed to cease violating their privacy rights without their knowledge or consent and nominal damages of $100 per violation;

e. Entering judgment for Plaintiff and the Class members on their NCESA claim and awarding all available damages, including actual damages of up to $1,000, punitive damages, reasonable attorneys' fees, and litigation costs;

f. Awarding injunctive relief to Plaintiff and the Class members that includes an order barring Defendant from any further interception, transmission, or commercial use of Plaintiff's and the Class members' individually-identifiable health information from FastMed's web properties absent express notice and informed consent;

g. Awarding pre- and post-judgment interest on all damages awarded;

h. Awarding recovery of Plaintiff's reasonable attorneys' fees and reimbursement of their litigation expenses; and

i. Awarding such additional relief as justice requires.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 25, 2023                                  Respectfully Submitted,

                                                      s/ Corey M. Stanton
                                                      Philip J. Gibbons, Jr., NCSB #50276
                                                      Corey M. Stanton, NCSB #56255
                                                      **GIBBONS LAW GROUP, PLLC**
                                                      14045 Ballantyne Corporate Place, Suite 325
                                                      Charlotte, North Carolina 28277
                                                      Telephone: (704) 612-0038
                                                      Facsimile (704) 612-0038
                                                      Email: phil @gibbonslg.com
                                                              corey@gibbonslg.com

28

*Local Rule 83.1(d) Attorneys for Plaintiff*

Ryan F. Stephan (*Special Appearance forthcoming*)
James B. Zouras (*Special Appearance forthcoming*)
Teresa M. Becvar (*Special Appearance forthcoming*)
Michael J. Casas (*Special Appearance forthcoming*)
**STEPHAN ZOURAS, LLP**
222 W. Adams Street, Suite 2020
Chicago, IL 60606
(312) 233-1550
(312) 233-1560 f
rstephan@stephanzouras.com
jzouras@stephanzouras.com
tbecvar@stephanzouras.com
mcasas@stephanzouras.com

David J. Cohen (*Special Appearance forthcoming*)
**STEPHAN ZOURAS, LLP**
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
dcohen@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF**